**Opinion issued October 4, 2012.**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

### NO. 01-12-00446-CV

———————————

## IN RE MID-CENTURY INSURANCE COMPANY OF TEXAS, Relator

---

### Original Proceeding on Petition for Writ of Mandamus

---

### OPINION

TH Healthcare, Ltd. d/b/a Park Plaza Hospital sued Mid-Century Insurance

Company of Texas seeking additional reimbursement for medical services

provided to a patient insured by Mid-Century.[1] Mid-Century filed a plea to the

---

[1]    Relator identifies the underlying case as *TH Healthcare, Ltd. d/b/a Park Plaza Hospital v. Mid-Century Insurance Company of Texas*, No. 2012-04155 in the 333rd District Court of Harris County, Texas, the Honorable Joseph J. "Tad" Halbach, Jr. presiding.

jurisdiction, asserting that Park Plaza Hospital failed to exhaust its administrative remedies with the Division of Workers' Compensation (DWC) before filing suit. The trial court denied the plea to the jurisdiction, and this petition for writ of mandamus followed. We conditionally grant the petition for writ of mandamus.

## Background

Park Plaza Hospital provided medical services to an injured worker insured by Mid-Century and billed Mid-Century $178,496.41 for the services. Mid-Century paid the hospital $43,812.47 for the services billed. Park Plaza asserts that Mid-Century should have paid $98,173.02 (55% of its billed charges) pursuant to Park Plaza's provider services agreement with Beech Street Corporation, a preferred provider organization.[2] Mid-Century denies any obligation under the services agreement and asserts that its payment of $43,812.47 was proper pursuant to the DWC's outpatient fee guideline. The dispute resulted in this lawsuit, filed by Park Plaza.

Mid-Century filed a plea to the jurisdiction, asserting that its payment dispute with Park Plaza falls within the exclusive jurisdiction of the DWC such that Park Plaza was required to exhaust its administrative remedies with the DWC

---

[2] The record does not establish the nature of Park Plaza and Mid-Century's contractual relationship, if any. Park Plaza asserts that it is a participating provider in the Beech Street network, an informal network of providers. Park Plaza claims that Mid-Century is obligated to pay the reimbursement rates set forth in the Park Plaza-Beech Street contract because Mid-Century processed the claim as a Beech Street network claim and its payments were made "as a Beech Street payer."

before filing this action in state court. Because Park Plaza failed to exhaust its administrative remedies before filing suit, Mid-Century contends, the trial court lacks jurisdiction over this case. The trial court denied Mid-Century's plea, and Mid-Century filed a petition for writ of mandamus with this Court.

## Standard of Review

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A plea challenges the trial court's authority to decide a case. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149 (Tex. 2012) (citing *Blue*, 34 S.W.3d at 553–54). In the context of jurisdictional exclusivity, there is a constitutional presumption that district court jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004) (quoting TEX. CONST. art. V, § 8). But when the legislature grants an administrative agency exclusive jurisdiction over a dispute, the district court lacks jurisdiction to the extent of the agency's exclusive authority to decide the dispute. *See Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006).

3

Whether the legislature has conferred exclusive jurisdiction on an agency is a question of statutory interpretation. *Blue Cross Blue Shield of Tex. v. Duenez*, 201 S.W.3d 674, 675–76 (Tex. 2006). In construing statutes, we seek to determine legislative intent by interpreting a statute according to its plain language when the plain language is unambiguous. *In re Entergy Corp.*, 142 S.W.3d at 322 (citing *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex.2003)). An agency has exclusive jurisdiction when the legislature expressly grants the agency exclusive jurisdiction or when a "pervasive regulatory scheme" reflects legislative intent that an agency have the sole power to make the initial determination in the dispute. *Id.*; *Thomas*, 207 S.W.3d at 340.

## The DWC's Exclusive Original Jurisdiction

The Workers' Compensation Act gives the DWC exclusive jurisdiction over certain workers' compensation disputes relating to entitlement to medical benefits, preauthorization of medical care, and reimbursement of medical expenses. *See* TEX. LAB. CODE ANN. §§ 409.021, 413.031 (West 2011); *see also Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 803 (Tex. 2001). "Through the workers' compensation statutory scheme, the legislature has given a health care provider the right to a review when the provider has rendered a medical service but has been paid a reduced amount for that service." *HealthSouth Med. Ctr. v. Emp'rs Ins. Co. of Wausau*, 232 S.W. 3d 828, 831 (Tex. App.—Dallas 2007, pet. denied) (citing

4

TEX. LAB. CODE ANN. § 413.031(a)(1)). "By granting the Division the sole authority to make an initial determination of a medical fee dispute, the Legislature has given the Division exclusive jurisdiction over such a dispute." *Id.*[3]

While the DWC's exclusive jurisdiction expressly extends to disputes over a workers' compensation insurer's denial of some or all of the amount of a health care provider's bills for medical services rendered, *see* TEX. LAB. CODE ANN. § 413.031(a)(1), there is a carve-out for disputes over medical fees for health care provided by certified workers' compensation networks. *See* TEX. INS. CODE ANN. §§ 1304.401–.405 (West 2009). Original jurisdiction over fee disputes relating to health care provided by a certified workers' compensation network is vested in the certified network's own complaint resolution system, which is required and governed by statute. *See id.*

Park Plaza argues that this action—in which it disputes the amount Mid-Century has paid on its bills for medical services rendered—falls outside the DWC's exclusive jurisdiction because it is a "private network contract dispute." According to Park Plaza, the DWC's jurisdiction extends only to non-network

---

[3] The "Division" referenced is the Medical Review Division of the Workers' Compensation Commission. The Workers' Compensation Commission is now the DWC. *See Texas Mut. Ins. Co. v. Ruttiger*, No. 08-0751, 2012 WL 2361697, *2 n.1 (Tex. June 22, 2012) ("In 2005, the Legislature abolished the Texas Workers' Compensation Commission and transferred its functions to the Texas Department of Insurance, Workers' Compensation Division.") (citing Act of May 29, 2005, 70th Leg., R.A., ch. 265, § 8.001, 2005 Tex. Gen. Laws 469, 607–08).

disputes, and this is a network dispute.[4] We disagree with Park Plaza's contention because the Beech Street network is not a certified "network" and thus its services are "non-network health care," as those terms are statutorily defined.

## A. The DWC has exclusive jurisdiction over non-network medical fee disputes

"The Legislature has granted extensive authority to the Division to regulate the amounts of reimbursement health care providers may receive under the workers' compensation system." *Main Rehab. & Diagnostic Ctr., LLC v. Liberty Mut. Ins. Co.*, No. 05-11-00189-CV, 2012 WL 2890413, at *3 (Tex. App.—Dallas July 13, 2012, no. pet. h.) (citing TEX. LAB. CODE ANN. § 413.011 (West Supp. 2011) and *Apollo Enters., Inc. v. ScripNet, Inc.*, 301 S.W.3d 848, 860 (Tex. App.— Austin 2009, no pet.)). Section 413.011 of the Labor Code requires the DWC to "adopt health care reimbursement policies and guidelines that reflect the standardized reimbursement structures found in other health care delivery systems with minimal modifications to those reimbursement methodologies as necessary to meet occupational injury requirements" and to "adopt the most current

---

[4] Park Plaza also states that the DWC "has no jurisdiction over private contractual agreements." To the extent Park Plaza argues that all contract-related disputes are beyond the DWC's jurisdiction, we disagree. As the Austin Court of Appeals has recognized, even workers' compensation fee disputes entailing resolution of embedded contract construction issues may "nevertheless fall[] within the 'disputes over the amount of payment due for services determined to be medically necessary and appropriate for treatment of a compensable injury' that the legislature has given the [DWC] exclusive jurisdiction to decide." *Apollo Enters., Inc. v. ScripNet, Inc.*, 301 S.W.3d 848, 865 (Tex. App.—Austin 2009, no pet.) (quoting TEX. LAB. CODE ANN. § 413.031(c)).

6

reimbursement methodologies, models, and values or weights used by the federal Centers for Medicare and Medicaid Services, including applicable payment policies relating to coding, billing, and reporting, and may modify documentation requirements as necessary to meet the requirements of Section 413.053." TEX. LABOR CODE ANN. § 413.011(a). Under subsection (d), the DWC's fee guidelines "must be fair and reasonable and designed to ensure the quality of medical care and to achieve effective medical cost control." *Id.* at § 413.011(d).

The Labor Code recognizes certain exceptions from the DWC's health care reimbursement policies and guidelines for health care provided pursuant to health care networks that are certified under Chapter 1305 of the Insurance Code. *See id.* § 413.011(d–4), (g).[5] Section 413.011 provides no such exceptions for uncertified health care networks. *See id.*

The DWC has created a dispute resolution process, called medical dispute resolution (MDR), for resolving medical disputes within its jurisdiction. *See* 28 TEX. ADMIN. CODE § 133.305(a)(4) (2008) (Tex. Dep't of Ins., MDR—General). MDR divides disputes into two categories: disputes over the amount of payment for health care services and disputes over the necessity of health care services provided. *See id.* The first category, disputes of the amount of payment for health

---

[5]     Relatedly, Chapter 1305 of the Insurance Code, providing for certified networks, trumps the Labor Code to the extent of a conflict between the two. *See* TEX. INS. CODE ANN. § 1305.003 (West 2009).

care services, is labeled "medical fee disputes." *Id.* But not all disputes over the amount of payment for workers'-compensation-related health care services constitute "medical fee disputes"; instead, that term is defined to include only disputes over payment for "non-network health care," which is any health care not provided by a certified health care network. *See id.* § 133.305(a)(5) (defining "medical fee disputes" to include disputes involving "an amount of payment for non-network healthcare"), (a)(7) (defining non-network health care as "[h]ealth care not delivered or arranged by a certified workers' compensation network as defined in Insurance Code Chapter 1305 and related rules"). Thus, Rule 133 treats disputes differently depending on whether the health care services at issue were provided by a certified or uncertified network. *See id.*; *Osborn v. Ace Am. Ins. Co.*, No. 10-09-00046-CV, 2011 WL 4089995, at *3 (Tex. App.—Waco Sept. 14, 2011, no pet.) (mem. op.) (observing distinct treatment for network and non-network health care); *see also* TEX. INS. CODE § 1305.004(a)(16) (West 2009) (defining "network" as an organization that is certified under Chapter 1305 of the Insurance Code).

Fee disputes over non-network health care—i.e., "medical fee disputes"—are resolved by the DWC "pursuant to division rules, including § 133.307 of this subchapter (relating to the MDR of fee disputes)." 28 TEX. ADMIN. CODE § 133.305(a)(5). In such disputes, "the role of the [DWC] is to adjudicate the

8

payment given the relevant statutory provisions and commissioner rules." TEX. LAB. CODE ANN. § 413.031(c). The DWC decides whether the dispute is adjudicated according to a DWC fee schedule or a contractual arrangement, and the DWC then adjudicates the dispute accordingly.[6] *See id.* If the medical fee dispute remains unresolved after the MDR process, any party to the medical fee dispute may request a benefit review conference. *Id.* § 413.0312(a), (b). If the dispute remains unresolved after the benefit review conference, the parties may elect to arbitrate or proceed to a contested case hearing before the State Office of Administrative Hearings (SOAH). *Id.* § 413.0312(d), (e); *see id.* § 413.031(k);

---

[6]      Section 133.4 of the Administrative Code provides in pertinent part:

> (g)   Noncompliance. The insurance carrier is not entitled to pay a health care provider at a contracted fee negotiated by an informal network or voluntary network if:
>
> (1)   the notice to the health care provider does not meet the requirements of Labor Code § 413.011 and this section; or
>
> (2)   there are no required contracts in accordance with Labor Code § 413.011(d–1) and § 413.0115
>
> (h)   Application of Division Fee Guideline. If the insurance carrier is not entitled to pay a health care provider at a contracted rate as outline in subsection (g) of this section and as provided in Labor Code § 413.011(d–1), the Division fee guidelines will apply pursuant to § 134.1(e)(1) of this title (relating to Medical Reimbursement), or, in the absence of an applicable Division fee guideline, reimbursement will be based on fair and reasonable reimbursement pursuant to § 134.1(e)(3) of this title.

28 TEX. ADMIN. CODE § 133.4 (2008) (Tex. Dep't Ins., Written Notification to Health Care Providers of Contractual Agreements for Informal and Voluntary Networks).

9

*Covenant Health Sys. v. Dean Foods Co.*, No. 07-09-0348-CV, 2011 WL 3717056, at *3 (Tex. App.—Amarillo Aug. 24, 2011, pet. filed) (mem. op.) ("If there is a dispute between a health care provider and a compensation carrier regarding a medical expense, the health care provider is entitled to review of the medical service, and must exhaust administrative review through the TWCC's medical review division, and a contested-case hearing before the [SOAH], before seeking judicial review of the decision in a Travis County District Court as governed by Chapter 2001 of the Government Code.") (citations omitted).[7] A party who is dissatisfied with SOAH's final decision may seek judicial review from a district court. TEX. LAB. CODE ANN. § 413.031(k–1); *see Covenant Health Sys.*, 2011 WL 3717056, at *3. Until a party has exhausted its administrative remedies with the DWC, a district court has no jurisdiction over these disputes. *See In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 625 (Tex. 2007) ("If an agency has exclusive jurisdiction to resolve a dispute, a party must first exhaust administrative remedies before a trial court has subject matter jurisdiction.").

When a medical fee dispute arises over "network health care," as opposed to "non-network health care," the DWC's MDR process does not apply. *See* 28 TEX. ADMIN. CODE § 133.305(a)(4)–(6). Instead, those disputes are submitted to the

---

[7]     The "TWCC" referenced is the Texas Workers' Compensation Commission, which is now the DWC.

10

network's complaint resolution system; the complaint resolution systems are required and governed by the Insurance Code, under which such networks are certified.[8] *See* 28 TEX. ADMIN. CODE §§ 10.120–.122 (2005) (Tex. Dep't of Ins., Complaint System Required); TEX. INS. CODE ANN. §§ 1305.401–.405 (West 2009) (governing complaint resolution system). If a party is dissatisfied with the certified network's resolution of the dispute, they may submit a complaint to the Texas Department of Insurance. 28 TEX. ADMIN. CODE § 10.122(a) (2005) (Tex. Dep't of Ins., Submitting Complaints to the Department).

## B.    This is a "non-network" dispute

Medical fee disputes, as defined in the Administrative Code, include disputes over an insurance carrier's reduction or denial of a medical bill, such as Mid-Century's reduced payment of Park Plaza's bill in this action. *See* 28 TEX. ADMIN. CODE §133.305(a)(5)(A); *Main Rehab. & Diagnostic Ctr.*, 2012 WL 2890413,  at *4 ("When a provider has received a reduced payment for a medical service rendered in the workers' compensation system and is dissatisfied with the payment, the provider has the right to seek MDR before the [DWC].") (citing TEX. LAB. CODE ANN. § 413.031(a)(1); *HealthSouth Med. Ctr.*, 232 S.W.3d at 831;

---

[8]    This process does not fall under the duties of the DWC. The Insurance Code's statutory scheme providing for the certified network dispute resolution systems indicates that, to the extent of any conflict, the Insurance Code provisions supersede Title 5 of the Labor Code, which bestows original exclusive jurisdiction on the DWC for resolving medical fee disputes. *See* TEX. INS. CODE § 1305.003 (West 2009).

11

*Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 435 (Tex. App.—Austin 2004, pet. denied)). Thus, the first issue presented here is whether Park Plaza's services were provided as part of a certified health care network. If they were, this is not a "medical fee dispute" subject to MDR by the DWC; if they were not, this is a "medical fee dispute" subject to MDR by the DWC. *See* 28 TEX. ADMIN. CODE § 133.305(a)(4)(A), (a)(5), (a)(7).

Park Plaza asserts that Beech Street Corporation formed an informal network of health care providers,[9] but it is undisputed that the Beech Street Network is not a certified network under the Insurance Code.[10] *See Osborn*, 2011 WL 4089995, at *5 (holding that trial court lacked jurisdiction over fee dispute involving Beech Street network because evidence did not establish that Beech Street was certified network). The health care services provided by Park Plaza as

---

[9]  Section 413.0115 of the Labor Code defines "voluntary" and "informal" networks. *See* TEX. LAB. CODE ANN. § 413.0115(a). All informal and voluntary networks were required to become certified networks under the Insurance Code on or before January 1, 2011. *Id.* § 413.0115(b).

[10]  Park Plaza points out that the Insurance Code did not require networks to be certified before January 1, 2011. *See* TEX. LAB. CODE ANN. § 413.0115(b) (requiring informal and voluntary networks to become certified by January 1, 2011). We agree that Beech Street was permitted to operate as a non-certified voluntary or informal network at the time in question—September 2010. But as a non-certified network, its medical fee disputes are subject to MDR before the DWC. If Beech Street were a certified network under the Insurance Code, it would have been statutorily required to maintain its own dispute resolution system for such disputes. *See* TEX. INS. CODE ANN. §§ 1305.401–.405; 28 TEX. ADMIN. CODE §§ 10.120–.122.

part of this informal network thus constitute "non-network health care." *See* 28 TEX. ADMIN. CODE § 133.305(a)(7) (defining non-network health care as "[h]ealth care not delivered or arranged by a certified workers' compensation network as defined in Insurance Code Chapter 1305 and related rules"); *see also* TEX. INS. CODE § 1305.004(a)(16) (defining "network" as an organization that is certified under Chapter 1305 of the Insurance Code). Park Plaza's complaint about the amount Mid-Century has paid for these services is therefore a "medical fee dispute" subject to MDR before the DWC. *See* 28 TEX. ADMIN. CODE § 133.305(a)(5) (defining "medical fee disputes" to include disputes involving "an amount of payment for non-network healthcare").[11]

Because the statutory scheme demonstrates that the legislature has given the DWC the sole authority to make an initial determination of such disputes, the DWC has exclusive original jurisdiction over this action. *See Osborn*, 2011 WL 4089995, at *5; *see also Main Rehab. & Diagnostic Ctr.*, 2012 WL 2890413, at *5 ("The statutory scheme demonstrates the Legislature has granted to the Division the sole authority to make an initial determination of a medical fee dispute and that the Division has exclusive jurisdiction over appellants' claims for the HPSA

---

[11] Park Plaza's reliance on the Sunset Commission report is misplaced for the same reason that its principal argument fails. The Sunset Commission report, like the governing statutes and regulations, recognized the different treatment of "network" and "non-network" fee disputes. Park Plaza assumes that this is a "network" dispute, but it is a "non-network" dispute under the applicable legal definitions.

incentive payments."); *HealthSouth Med. Ctr.*, 232 S.W.3d at 830–31 ("When the legislature grants an administrative body the sole authority to make an initial determination in a dispute, the agency has exclusive jurisdiction over the dispute."); *Howell*, 143 S.W.3d at 435 ("Because the statutory scheme demonstrates that the legislature has granted to the Commission the sole authority to make an initial determination of a medical fee or medical necessity dispute, we hold that the Commission has exclusive jurisdiction over these disputes.").[12]

## C. The DWC's jurisdiction does not exclude disputes involving contracts

Relying on former section 133.307 of the Administrative Code,[13] Park Plaza next suggests that, even if this is a "medical fee dispute" that would otherwise be subject to MDR, the DWC does not have jurisdiction over this dispute because it is contract-based. *See* 37 Tex. Reg. 3833 (current version at 28 TEX. ADMIN. CODE § 133.307). Section 133.307 provides a procedural framework for MDR in the DWC. *See* 28 TEX. ADMIN. CODE §§133.305–.309. The version of section 133.307 that applied to MDRs filed before June 1, 2012 stated: "This section applies to a request for medical fee dispute for non-network or certain authorized out of network health care not subject to a contract[.]" 37 Tex. Reg. 3833; *see* TEX.

---

[12]  The "Commission" referenced is the Workers' Compensation Commission, which is now the DWC.

[13]  The current version of section 133.307 applies to requests for MDR filed on or after June 1, 2012. 28 TEX. ADMIN. CODE § 133.307(a)(1).

14

ADMIN. CODE 133.307(a)(1) (providing applicable dates for former and current rule). Park Plaza relies on this language to argue that the MDR process (and the DWC's jurisdiction) does not extend to contract disputes.

In support of this contention, Park Plaza asserts that the DWC has dismissed disputes similar to this one in the past, pointing to two dismissal notices from other DWC proceedings attached as exhibits to Park Plaza's response to Mid-Century's plea to the jurisdiction. Park Plaza asserts that these dismissals were justified by a now-repealed agency rule, which stated, "The [DWC] may dismiss a request for [MDR] if [it] determines the medical fee dispute is for health care services provided pursuant to a private contractual fee arrangement." *See* 33 Tex. Reg. 3954 (2012) (repealing 28 TEX. ADMIN CODE § 133.307(e)(3)(F)).

Park Plaza's reliance on former rule (e)(3)(F) is unpersuasive for several reasons. First, it is the legislature's prerogative to take jurisdiction over specific disputes out of the courts and place it in an administrative body. *See Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 160 (Tex. 2007) ("the Texas Constitution expressly allows the Legislature to grant jurisdiction to administrative bodies rather than the courts"). When the Legislature unambiguously grants jurisdiction to an administrative body, the administrative body has no power to expand or contract that jurisdiction unless  authorized to do so by statute. *Cf.* TEX. OCC. CODE ANN. § 2301.151(a) (West 2012) (granting the motor vehicle board

15

"original jurisdiction to determine its own jurisdiction"); *see generally Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132, 120 S. Ct. 1291, 1300, (2000) (holding that FDA's interpretation of its own jurisdiction bore no weight when Congress had unambiguously expressed its intent as to scope of FDA's jurisdiction over tobacco products).

Second, former rule (e)(3)(F) does not indicate that the DWC lacked jurisdiction over contract disputes. To the contrary, the rule's permissive language indicates that the DWC could elect not to dismiss such requests for MDR and, instead, exercise jurisdiction to decide the dispute. *See See* 33 Tex. Reg. 3954 (2012) (repealing 28 TEX. ADMIN CODE § 133.307(e)(3)(F)). Even when the DWC elected to dismiss a contractual dispute under former rule (e)(3)(F), courts presume that the DWC did so after "determin[ing] the threshold question of whether or not the contract applies to the health care services at issue." *Apollo Enters.*, 301 S.W.3d at 865 n.15. The two DWC dismissals on which Park Plaza relies do not require a contrary interpretation of the rule: they do not reveal the substance of the disputes to which they relate and may well have occurred after various initial determinations by the DWC; nor does the record establish that the disputes were "non-network," as opposed to "network" medical fee disputes. Here, the DWC has not had the opportunity to make any such determinations, and Mid-Century

16

contests that the Beech Street agreement governs its payment obligation to Park Plaza.

Moreover, the DWC has now repealed rule (e)(3)(F), recognizing that "when the dispute is for health care services provided pursuant to a private contractual fee arrangement . . . under the [Texas Workers' Compensation] Act the Division has original jurisdiction to ensure that these contracts comply with applicable statutory requirements . . . ." 37 Tex. Reg. 3833, 3837 (2012). Thus, the DWC has recognized its jurisdiction over disputes such as this one. Although the DWC has clarified (if not altered) its understanding of its own jurisdiction during the pendency of this action, the statutory jurisdictional grant (and thus the DWC's actual jurisdiction) remain the same.[14] The DWC had, and continues to have, exclusive original jurisdiction over this dispute.

## Availability of Mandamus Relief

Having concluded that the trial court erred in denying Mid-Century's plea to the jurisdiction, we must determine whether mandamus relief is available to remedy the error. "Mandamus relief is appropriate only if the court clearly abused its discretion and the relator has no adequate remedy by appeal." *In re Entergy Corp.*, 142 S.W.3d at 320. A trial court abuses its discretion when it issues an order it has no power to render or when it acts arbitrarily, capriciously, and without

---

[14] We recognize that some of the regulatory and judicial material that guides our decision in this case was not available to the trial court at the time of its decision.

17

reference to guiding principles. *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999); *McGough v. First Ct. of Appeals*, 842 S.W.2d 637, 640 (Tex. 1992).

When a trial court erroneously denies a plea to the jurisdiction, the fact that the party seeking mandamus may be "forced to endure the 'hardship' of a full-blown trial" if the appellate court declines mandamus relief is not, alone, sufficient to render remedy by appeal inadequate. *In re Entergy Corp.*, 142 S.W.3d at 321. In the context of exclusive agency jurisdiction, however, appellate courts must also consider whether denying mandamus relief interferes with the agency's legislatively mandated function and purpose. *Id.* Such interference may constitute a "clear disruption of the 'orderly process of government,'" such that mandamus is appropriate. *See id.* (quoting *State v. Sewell*, 487 S.W.2d 716, 719 (Tex. 1972)).

We hold that mandamus is appropriate here because the denial of Mid-Century's plea to the jurisdiction disrupts the orderly process of government by thwarting the legislature's schema for administrative resolution of workers' compensation medical fee disputes. *See In re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d 327, 328 (Tex. 2009) (holding that, where Workers' Compensation Act vested exclusive original jurisdiction in DWC, trial court's failure to grant plea to the jurisdiction was "correctable by mandamus to prevent a disruption of the orderly processes of government") (citing *In re Sw. Bell Tel. Co.*, 235 S.W.3d at 624; *In re Entergy Corp.*, 142 S.W.3d at 321).

18

## Conclusion

We hold the trial court abused its discretion in denying Mid-Century's plea to the jurisdiction. We conditionally grant Mid-Century's petition for writ of mandamus and direct the trial court to grant Mid-Century's plea to the jurisdiction. We are confident that the trial court will promptly comply, and our writ will issue only if it does not.

Harvey Brown
Justice

Panel consists of Justices Keyes, Massengale and Brown.