# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00666-CV

Facility Insurance Corporation, Appellant

v.

Patients Medical Center, Appellee

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-13-003388, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## O P I N I O N

This appeal emanates from a "medical fee dispute" arising within the context of the Texas Workers' Compensation Act (the Act), *see generally* Tex. Lab. Code §§ 401.001–419.007, and the exclusive jurisdiction of the Texas Department of Insurance's Division of Workers' Compensation (the Division) to determine such disputes. The dispute concerns the amount of reimbursement owed by a workers' compensation insurance carrier, Facility Insurance Corporation (Carrier), to a hospital, Patients Medical Center (Provider), for providing medical services to an injured worker. Carrier appeals the trial court's final judgment affirming a SOAH[1] Decision and

---

[1] SOAH is an acronym for the State Office of Administrative Hearings, which is the agency authorized to conduct "appeals" (in the form of contested-case hearings) from a decision of the Division on a medical-fee dispute, after which hearing an administrative law judge (ALJ) renders the final administrative order on the claim. *See Vista Med. Ctr. Hosp. v. Texas Mut. Ins. Co.*, 416 S.W.3d 11, 17–18 (Tex. App.—Austin 2013, no pet.).

Order determining that Carrier shall pay Provider $20,495.78, plus any applicable interest. We will reverse the trial court's final judgment and remand this cause to the Division for further proceedings.

## BACKGROUND

*Workers' compensation medical-fee disputes generally*

Because the parties' contentions on appeal arise from and center on the Act's regulation of medical reimbursement paid to health-care providers and resolution of disputes about such payments, we provide only a brief summary of the applicable procedures and regulations and direct readers to other opinions from this Court outlining in detail the procedural framework. *See, e.g.*, *Vista Med. Ctr. Hosp. v. Texas Mut. Ins. Co.*, 416 S.W.3d 11 (Tex. App.—Austin 2013, no pet.).

Medical-fee disputes such as the one at issue in this case are resolved by the Division pursuant to its duly promulgated rules, including Rule 133.307, relating to "medical fee dispute resolution" (MFDR). *See* 28 Tex. Admin. Code § 133.307 (2018) (Texas Dep't of Ins., MDR of Fee Disputes); *In re Mid-Century Ins. Co. of Tex.*, 426 S.W.3d 169, 174 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding). A health-care provider dissatisfied with a carrier's payment on a claim can file an administrative dispute with the Division.[2] *See* Tex. Lab. Code § 413.031(a); *Texas Mut. Ins. Co. v. Vista Cmty. Med. Ctr., LLP*, 275 S.W.3d 538, 544 (Tex. App.—Austin 2008, pet. denied). To adjudicate the dispute, a Division employee known as a "medical dispute resolution officer"

---

[2] Similarly, MFDR is also available to providers who are ordered by the Division to refund a payment received from a carrier and to carriers who have made refund requests of providers and been refused. *Vista Med. Ctr.*, 416 S.W.3d at 17 (citing Tex. Lab. Code § 413.031(a)(3); 28 Tex. Admin. Code §§ 133.304(p), .305 (2018)).

(MDRO) reviews the complaint and documentation filed by the provider and the carrier and determines the appropriate reimbursement due the provider under the Labor Code and the Division's rules. *Texas Mut. Ins. Co.*, 275 S.W.3d at 544. Procedurally, the MDRO determines a medical-fee dispute on the papers submitted by each party; it is not a contested-case hearing. *Vista Med. Ctr.*, 416 S.W.3d at 17. The MDRO decides whether a Division fee schedule or a contractual arrangement applies to the dispute, and the MDRO then resolves the dispute accordingly. *See In re Mid-Century*, 426 S.W.3d at 174.

If the medical-fee dispute "remains unresolved" after the MFDR renders a decision, any party to the dispute may request a benefit review conference. Tex. Lab. Code §§ 413.031(k), .0312(a), (b). If the dispute still "remains unresolved" after the benefit review conference, the parties may elect to either arbitrate or proceed to a contested-case hearing before SOAH. *Id.* § 413.0312(d), (e); *see id.* § 413.031(k); *In re Mid-Century*, 426 S.W.3d at 174. After the contested-case hearing, the ALJ issues the final administrative order. *See* Tex. Lab. Code §§ 402.073(b), 413.031(k). A party who is "aggrieved" by SOAH's final decision may seek judicial review from a district court. *Id.* § 413.031(k-1).

*Factual and procedural background*

Prior to the events from which this dispute arose, the injured worker (Patient) had undergone permanent implantation of an internal spinal cord stimulator (or "generator") and electrode arrays (or "leads")[3] to help control pain from an injury she sustained while moving a desk

---

[3] Appellee's brief explains that "a spinal cord stimulator is a device used to apply pulsed electrical signals to the spinal cord," usually consisting of stimulating electrodes implanted in the

3

at work.  In August 2009, one of Provider's surgeons requested preauthorization from Carrier to perform two surgical procedures on Patient: "Spinal cord stimulator-revision (CPT[4] 63660) and Programming (CPT 95972)."  In its preauthorization letter in response, Carrier stated that Patient's stimulator leads had been "removed in 10/08 due to migration" and that Provider's surgeon was "requesting replacement of the leads."  Carrier's letter concluded that the surgeon's proposal to "replace the leads, hook them back up, and reprogram the [generator] unit to get maximum coverage" was "a very reasonable tx [treatment] plan."  Carrier's letter also "approved" the surgeon's two requested procedures.

The surgery was later performed, after which Provider sent a bill to Carrier for its services in the amount of $94,640.48.  Provider's bill identified charges for the two preauthorized CPT codes as well as several others.  Carrier paid Provider only $2,345.75, explaining its denial of most of the billed charges as exceeding the preauthorization and asserting that it was entitled to pay only 92% of the "allowable" charges due to an informal network contract that existed between Provider and Aetna and to which Carrier was entitled to access to receive the benefit of discounted rates.  Provider requested that Carrier reconsider its denial of its claim.  *See* 28 Tex. Admin. Code § 133.250 (2018) (Tex. Dep't of Ins., Reconsideration for Payment of Medical Bills).  Carrier denied any additional payments.

---

epidural space, an electrical pulse generator implanted in the lower abdominal or gluteal region, conducting wires connecting the electrodes to the generator, and an external generator remote control.

[4]  The Current Procedural Terminology (CPT) is a medical-code set maintained by the American Medical Association.

Provider then sent Carrier a "corrected" bill, which omitted some of the previous CPT codes appearing on the original bill, and accompanied the corrected bill with a request for "2nd level of reconsideration." Carrier denied payment on the corrected bill, asserting that Provider had failed to submit the bill within 95 days from the date of service. *See* Tex. Lab. Code § 408.027(a) (stating that provider's failure to submit claim to carrier within 95 days of service "constitutes a forfeiture of the provider's right to reimbursement for that claim").

Provider timely requested that the Division conduct MFDR. *See id.* § 413.031(a). The MDRO later issued her decision, in which she explained that she had considered the disputed services and Carrier's denial thereof as explained in Carrier's Explanation of Benefits dated November 9, 2010 (issued in response to Provider's first reconsideration request). The MDRO's decision awarded Provider additional reimbursement in the amount of $20,495.78. Carrier requested a contested-case hearing at SOAH, after which the ALJ issued a Decision and Order (the SOAH Order).

The SOAH Order identified as the "three issues in this case": (1) whether the original medical bill sent by Provider to Carrier "was a complete medical bill as defined by 28 Texas Administrative Code (TAC) § 133.2"; (2) "whether the Carrier had the burden of proof" in the contested-case hearing; and (3) "whether the services were preauthorized."[5] The SOAH Order concluded that Carrier "failed to carry its burden that Provider is not entitled to $20,495.78" in

---

[5] Carrier raised other issues—including the alleged miscalculation of the reimbursement amount—in its Written Closing Argument submitted to the ALJ, but the ALJ specifically addressed only the three issues identified above.

5

additional reimbursement and ordered that Carrier pay Provider that sum. Carrier appeals the SOAH Order.

## STANDARD OF REVIEW

Our review of the SOAH Order is governed by the same analysis as that in the district court—the "substantial-evidence rule." *Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 148 (Tex. App.—Austin 2017, no pet.); *see* Tex. Lab. Code § 410.255(b); *Hartford Ins. Co. v. Crain*, 246 S.W.3d 374, 379 (Tex. App.—Austin 2008, no pet.) (noting that under workers' compensation statutes, all issues besides compensability or income or death benefits are reviewed using substantial-evidence rule). Under that standard, we must reverse or remand the case for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are"

> (A) in violation of a constitutional or statutory provision;
> (B) in excess of the agency's statutory authority;
> (C) made through unlawful procedure;
> (D) affected by other error of law;
> (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or
> (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code § 2001.174. Essentially, this is a rational-basis test to determine, as a matter of law, whether there is a reasonable basis in the record for the agency's action; we do not determine whether the agency made the correct conclusion in our view. *Jenkins*, 537 S.W.3d at 149. We apply this analysis without deference to the district court's judgment. *Id.*; *see Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam).

6

**DISCUSSION**

Carrier raises five issues on appeal, asserting that: (1) the ALJ committed "legal error" in failing to apply the "informal" or "voluntary" network rate allowed for by contract between Provider and Aetna, which Carrier was allegedly entitled to access; (2) Provider "forfeited" the right to payment for failing to submit a "complete" and timely bill; (3) Provider "waived" its entitlement to the Division's MFDR process by failing to request reconsideration of the Carrier's response to Provider's "corrected" bill; (4) the ALJ incorrectly determined Provider's entitlement to and amount of reimbursement; and (5) the ALJ committed "legal error" in improperly "reversing" the burden of proof at the contested-case hearing. We will address Carrier's last issue first because it pertains to alleged legal and procedural error in the SOAH proceedings, which could potentially obviate our review of Carrier's other issues. *See* Tex. Gov't Code § 2001.174 (requiring reversal of agency order if party's substantial rights have been prejudiced because agency's findings, inferences, conclusions, or decisions are made through unlawful procedure or are affected by other error of law).

*Whether the ALJ improperly shifted the burden of proof to Carrier*

Carrier contends that the ALJ improperly shifted the burden of proof from Provider to Carrier, requiring it to "disprove the amount [of additional reimbursement] calculated by the MDRO." Carrier points to the following conclusion of law by the ALJ: "Carrier failed to carry its burden that Provider is not entitled to $20,495.78 in additional reimbursement." Carrier argues that the "dispositive issue" in a medical-fee dispute remains, throughout the entire dispute-resolution process, "whether the provider is entitled to the additional amount claimed." Therefore, Carrier

7

continues, Provider carries the burden of proof on its claim to the additional amount owed even throughout proceedings at SOAH. We agree.

For medical-fee disputes proceeding to a SOAH hearing provided for by the Legislature, as here, the SOAH hearing is to be "a de novo contested-case hearing on the reimbursement or refund claim." *See Vista Med. Ctr.*, 416 S.W.3d at 17–18. In determining which party has the burden of proof in a de novo contested-case hearing, SOAH's rules require the ALJ to "first consider the applicable statute, the referring agency's rules, and the referring agency's policy." 1 Tex. Admin. Code § 155.427 (2018) (State Office of Admin. Hearings, Burden of Proof). After considering those sources, the ALJ "may" consider other factors, including, relevantly here: (a) who is the party seeking affirmative relief, (b) who is the party seeking to change the status quo, and (c) whether a party would be required to prove a negative. *Id.* While the Labor Code does not speak to the burden of proof in SOAH hearings, the Division's rules do: "The burden of proof rests with the party seeking relief in hearings conducted pursuant to Labor Code [sections 413.031 and 413.0312, relevant here, pertaining to medical-fee disputes]." 28 Tex. Admin. Code § 148.14(b) (2018) (Texas Dep't of Ins., Burden of Proof); *see* Tex. Lab. Code §§ 413.031(k), .0312(e). We therefore consider which party is "seeking relief" here.

Neither the applicable rules nor statutes define the common term "relief," which in ordinary legal usage, as relevant here, means "[t]he redress or benefit, esp. equitable in nature (such as an injunction or specific performance), that a party asks of a court." *Relief*, *Black's Law Dictionary* (10th ed. 2014). A contested-case hearing concerning a medical-fee dispute is conducted in the context of, and pursuant to, the Labor Code's specific MFDR process, which "delegates to the

8

Division (and, in turn, SOAH) exclusive jurisdiction to determine the amount of medical reimbursement that is owned by a carrier to a health care provider . . . subject to judicial review under the APA substantial-evidence standard." *See Vista Med. Ctr.*, 416 S.W.3d at 18. If a party is dissatisfied with the decision of the MDRO, it may "seek review of the decision" by first requesting a benefit review conference with the Division and then, if still dissatisfied, filing a written request for a SOAH hearing with the Division. *See* 28 Tex. Admin. Code § 133.307(g).

The SOAH hearing comprises, essentially, yet another step in the statutorily prescribed process *initiated by a provider* via its filing of an administrative dispute with the Division on its claim for reimbursement after being denied payment by a carrier. *See* Tex. Lab. Code § 413.031(a) ("A party, including a health care provider, is entitled to review of a medical service provided or for which authorization of payment is sought if a health care provider is . . . denied payment or paid a reduced amount for the medical service rendered . . . ."); 28 Tex. Admin. Code § 133.250(i) ("If the health care provider is dissatisfied with the insurance carrier's final action on a medical bill after reconsideration, the health care provider may request medical dispute resolution . . . ."); *see also Texas Mut. Ins. Co.*, 275 S.W.3d at 544. Therefore, the Division (and, in turn, SOAH) is *the* adjudicative body charged with determining whether the provider is entitled to payment on its reimbursement claim—in other words, in determining whether the provider is entitled to the "relief" it seeks in the form of reimbursement.[6]

---

[6] This Court has previously noted that the ALJ effectively stands in the shoes of the Division in rendering the final order on a provider's claim: "Following the contested-case hearing (colloquially termed an 'appeal'), the ALJ renders the final administrative order on the claim." *Vista Med. Ctr.*, 416 S.W.3d at 18.

In this administrative-adjudicative context, the salient dispute remains a constant throughout the MFDR process, including the hearing at SOAH: to how much reimbursement is the provider entitled? Indeed, the MFDR process continues until ultimately decided by SOAH precisely because the dispute "remains unresolved" until that point. *See* Tex. Lab. Code §§ 413.031(k), 413.0312(a),(b), (d), (e). Similarly, it is the provider's claim to a certain amount of reimbursement refused by a carrier that initiates the MFDR process, an inherent part of which is the SOAH hearing. By invoking the MFDR process, the provider is seeking to change the status quo—the status quo being that the carrier has refused to pay a reimbursement claim.[7] Furthermore, the provider is the party seeking "affirmative relief" (in the form of reimbursement) throughout the entire review process under the workers' compensation regime, despite a carrier's challenging a reimbursement award at any given stage within the MFDR context. *Cf. Manbeck v. Austin Indep. Sch. Dist.*, 381 S.W.3d 528, 532–33 (Tex. 2012) (holding that school-district carrier under Act "never sought affirmative relief" by merely availing itself of "the administrative phase of the [Act's dispute-resolution] process" in seeking review of Division's decision on extent of worker's compensable injury). It follows that the provider is the party "seeking relief" on its reimbursement claim from the Division and, by extension of the Division's exclusive jurisdiction and delegation to SOAH, from that tribunal as well. Thus, the provider carries the burden of proof in de novo contested-case hearings at SOAH conducted on the provider's claim to reimbursement.

---

[7] Conversely, in a medical-fee dispute in which a carrier seeks a refund from a provider on the carrier's claim of overpayment, the status quo would be the provider's refusal to pay a refund, and the carrier would be the party seeking to change that status quo.

Yet, the ALJ explicitly placed the burden of proof on Carrier when he concluded that "Carrier failed to carry its burden that Provider is not entitled to $20,495.78 in additional reimbursement." Carrier was, therefore, required to prove a negative, and the result of its failure to prove that negative means that Provider is unequivocally entitled to the same amount awarded by the MDRO—$20,495.78—without having to bring forth any evidence supporting that amount, apart from the MDRO's decision itself.[8] Such legal and procedural error prejudiced Carrier's substantial rights because, as a result thereof, Carrier was ordered by the Division to pay Provider a sum of money.

Moreover, the ALJ's improper burden-shifting rendered the Legislature's grant of a contested-case hearing to Carrier useless; if an ALJ may simply uphold the decision of the MDRO on the basis of the MDRO's decision itself, there is a lack of any meaningful review, despite the Legislature's express provision for a SOAH hearing. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."); *see also* Tex. Gov't Code § 311.021(2) (presumption that entire statute is intended to be effective); *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 637 (Tex. 2010) ("Courts 'do not lightly presume that the Legislature may have done a useless act.'" (quoting *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485 (Tex. 1998))). A dissatisfied party's subsequent

---

[8] As outlined in great detail in Carrier's brief, a critical component of the formula used in the MDRO's calculation of the reimbursement amount is the so-called "sum of all packaged costs," which the MDRO—without any explanation—declared to be $20,649.75. This "packaged costs" amount was determinative in the MDRO's conclusion that Provider was entitled to so-called "outlier payments," which comprised the largest component of the total reimbursement awarded.

filing of a petition for judicial review—after the lack of any meaningful review at SOAH—would only magnify the error and constitute yet another layer of meaningless review. After all, how would *any* administrative record *not* contain substantial evidence to support an ALJ's conclusion that a carrier *failed* to prove a negative, especially when a provider presented no relevant evidence? The ALJ's legal and procedural error requires reversal and remand for a new contested-case hearing in accordance with this opinion, in which Provider has the burden of proving the amount of reimbursement to which it claims it is entitled.

Accordingly, we sustain Carrier's fifth issue and hold that the trial court erred in affirming the SOAH Order. In sustaining this issue, we need not reach Carrier's other issues.

**CONCLUSION**

Having sustained Carrier's fifth issue and concluding that the ALJ improperly shifted the burden of proof from Provider to Carrier, we reverse the judgment of the district court affirming the SOAH Order and remand this cause to the Division for further proceedings consistent with this opinion.

_____
David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Reversed and Remanded

Filed: December 5, 2018