**Opinion issued July 16, 2013**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-12-00411-CV**

_____

**HAND & WRIST CENTER OF HOUSTON, P.A., Appellant**

**V.**

**SGS CONTROL SERVICES, INC., Appellee**

___

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-52568**

___

## O P I N I O N

After Charles Reagan was injured during the course and scope of his employment, his employer, SGS North America, Inc. ("SGS"), took him to Hand & Wrist Center, P.A. ("Hand & Wrist") for treatment, and one of SGS's employees

signed a "Letter of Guarantee," obligating SGS to pay Hand & Wrist the fees charged for Reagan's medical expenses if its workers' compensation insurance coverage did not cover the claim. SGS did not pay Hand & Wrist, and Hand & Wrist sued to recover the costs of its "usual and customary fees" for the medical services rendered to Reagan. SGS filed a plea to the jurisdiction, arguing that the trial court lacked subject matter jurisdiction because Hand & Wrist failed to exhaust its administrative remedies prior to filing suit. The trial court granted the plea and dismissed the case. In three issues, Hand & Wrist contends that (1) the trial court erroneously granted the plea to the jurisdiction because the evidence demonstrated that SGS elected not to invoke its workers' compensation coverage for this claim; (2) the exclusive remedies provision of the Workers' Compensation Act does not apply to health care providers such as Hand & Wrist; and (3) the Texas Legislature did not intend for the exclusive remedies provision to apply to both employees seeking compensation benefits and health care providers.

We affirm.

## Background

On May 7, 2010, Charles Reagan injured his hand while at work and was referred to Hand & Wrist for treatment. Randy Davis, SGS's regional Health, Safety, and Environmental Coordinator, accompanied Reagan to Hand & Wrist.

2

Davis, in his capacity as "HSE Coordinator," signed a Letter of Guarantee presented by Hand & Wrist administrative staff. This letter provided:

> SGS Control (hereafter called "the Company") desires that Charles Reagan (hereafter called "the Patient") receive medical care for injuries sustained on or about 05/07/2010. In that regard, the Company hereby agrees to the following. The Company guarantees that it will pay Hand & Wrist Center of Houston, P.A., SCA Houston Hospital for Specialized Surgery, L.P., and Gulf Anesthesia Associates, P.A. (hereafter called "the medical care providers") their usual and customary fees for medical care rendered to the Patient. Payment will be made within 30 days after receiving notice. This Letter of Guarantee may be canceled only with 30 days written notice by either party.

> The Medical Providers will not seek additional payment from the Company under this Letter of Guarantee if 1) payment is made by an insurance carrier in accordance with the Texas Department of Insurance-Division of Worker's Compensation statutory fee schedule, or 2) payment is made under terms of a Certified Health Care Network's contracted fee schedule, 3) payment is made by a Third Party Administrator's Provider Agreement, if any are in effect, or 4) the Company has workers' compensation insurance with Texas Mutual Insurance Company.

> Payment will be made even if the injury is determined to have occurred while the Patient was not at work, or if the injury is not reported to the insurance carrier (if any), or if a claim is not filed with the insurance carrier, by the Employer, in a timely fashion. Payment will be made even if the patient tests positive for drugs or alcohol at the time of the injury.

> Any dispute regarding this Letter of Guarantee will be resolved in a Court of Harris County, Texas. Because the Company agrees to pay these fees if and when there is no insurance coverage, then lack of insurance is not a defense to payment of the fees. This Letter of Guarantee is effective upon the date appearing below. This agreement may only be modified or terminated in writing. This agreement is an enforceable contract.

Hand & Wrist billed a total of $5,850.75 for Reagan's medical care.  It is undisputed that SGS never paid Hand & Wrist for the care provided to Reagan.[1]

After several unsuccessful attempts to obtain payment from SGS, Hand & Wrist sued SGS for breach of contract.  Hand & Wrist alleged that, in the Letter of Guarantee, SGS "agreed to pay for the medical services to be provided to Charles Reagan for injuries he sustained on or about the same day that the contract was signed," but SGS failed to pay after repeated requests for payment.

SGS answered and filed a plea to the jurisdiction.  In its plea, SGS asserted that Reagan was injured during the course and scope of his employment and that SGS had workers' compensation insurance coverage.  Thus, the Texas Department of Insurance-Workers' Compensation Division ("the Division") had exclusive jurisdiction over any disputes about payment arising out of the medical care provided for Reagan's injury "until the administrative remedy has been exhausted."  SGS alleged that Hand & Wrist had not submitted a valid claim for payment to its workers' compensation insurance carrier nor had it "participated in the medical dispute resolution process provided for under the [Texas Workers' Compensation Act]."  As a result, it argued that Hand & Wrist had not exhausted

---

[1]     The parties acknowledge that, after Hand & Wrist filed suit against SGS, SGS's insurance carrier partially paid the amounts billed by Hand & Wrist for Reagan's medical care.  SGS's insurance carrier paid $3,320.13 to Hand & Wrist.

its administrative remedies and that the trial court therefore lacked subject matter jurisdiction over the dispute.

Hand & Wrist filed the following response:

> Defendant claims that its plea to the jurisdiction should be granted because defendant is a subscriber to workers' compensation insurance. This argument fails because plaintiff's claim is based on a contract that defendant signed agreeing to pay the fee for the medical services under several conditions stated in the contract. In this case, plaintiff has not been paid by workers' compensation insurance or any other source, and therefore, under the terms of the contract, defendant is obligated to pay regardless of whether it was or was not a subscriber to workers' compensation insurance.

The trial court held a hearing on SGS's plea to the jurisdiction. At the hearing, Sean Lundy, Hand & Wrist's medical practice executive, testified concerning the services Hand & Wrist provided to Reagan and its attempts to recover payment for its services. He testified that the letter of guarantee used by Hand & Wrist in cases involving injured employees allows an employer to determine whether it wants its insurance carrier to cover a claim or whether it wants to "take care of it [itself]," but the letter "does not allow [an employer] to not pay." Lundy understood the Letter of Guarantee to be an agreement that "SGS is going to pay if [it does not] elect to invoke [its] workers' comp or if there is not workers' comp coverage." Lundy testified that SGS did not inform Hand & Wrist of its insurance carrier, and therefore Hand & Wrist did not know whom to bill, aside from SGS, for Reagan's medical care. On cross-examination, Lundy

5

testified that SGS elected not to use its workers' compensation insurance coverage for this claim, and, as evidence for this assertion, he stated that SGS "did not turn the claim over to [its] workers' comp insurance company within [its] timely filing deadline." He acknowledged that he had no documentation that SGS did not report the claim to its insurance carrier, that SGS told Hand & Wrist that it was not going to use its workers' compensation insurance, or that SGS elected to pay for the services itself. SGS did not object to Lundy's testimony, and it did not offer any evidence of its own at this hearing.

The trial court granted SGS's plea to the jurisdiction and dismissed Hand & Wrist's suit without prejudice.

Hand & Wrist then moved for a new trial. It argued that it presented unrebutted evidence at the hearing that it had complied with the requirements of the Texas Workers' Compensation Act. It also argued that the Division does not have jurisdiction over this case because "under the factual circumstances presented by [Hand & Wrist's] unrebutted testimony, the [Workers' Compensation] Act does not provide [Hand & Wrist] with a remedy." It argued that Hand & Wrist's only relief, and its only method to obtain the payment that it is owed under the Letter of Guarantee, was via an action for breach of contract.

In its response to Hand & Wrist's motion for new trial, SGS presented the affidavit of Randy Davis. Davis averred that when he arrived at Hand & Wrist

6

with Reagan, he informed Hand & Wrist personnel that the injury was work-related and that SGS had workers' compensation insurance. SGS also presented evidence that it notified its insurance carrier of the injury on May 11, 2010, four days after the injury occurred. SGS also attached a pre-authorization request for occupational therapy from Hand & Wrist, submitted to SGS's insurance carrier two weeks after Reagan's injury, and a letter from SGS's insurance carrier approving the request. SGS argued that Hand & Wrist properly complied with the Workers' Compensation Act's pre-authorization requirements, but it never submitted a bill for Reagan's medical services to SGS's insurance carrier. Further, SGS presented evidence that its insurance carrier partially paid Hand & Wrist for the medical services rendered. SGS argued that if Hand & Wrist was dissatisfied with receiving only partial payment, it could have filed a dispute with the Division and proceeded through the medical fee dispute resolution process, which would have exhausted Hand & Wrist's administrative remedies.

SGS also pointed out that, even if Hand & Wrist's assertion that it timely presented its bills for payment was correct, the Workers' Compensation Act provided a remedy if SGS's insurance carrier failed to pay. Thus, Hand & Wrist was not left with a breach of contract suit as its only method of recovering payment. SGS argued that because Hand & Wrist "failed to participate in any step

7

of the administrative process, much less exhaust its administrative remedies, this Court does not have subject-matter jurisdiction over this claim."

The trial court denied Hand & Wrist's motion for new trial, and this appeal followed.

## Plea to the Jurisdiction

In its first issue, Hand & Wrist contends that the trial court erroneously granted SGS's plea to the jurisdiction because the evidence reflected that SGS did not elect to invoke its workers' compensation insurance coverage for Reagan's claim. In its second and third issues, it contends that the exclusive remedies provision of the Workers' Compensation Act applies only to employees and does not apply to health care providers. We consider these issues together.

### A.    *Standard of Review*

We review a trial court's ruling on a plea to the jurisdiction de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When reviewing a trial court's ruling on a jurisdictional plea, "we first look to the pleadings to determine if jurisdiction is proper, construing them liberally in favor of the plaintiffs and looking to the pleader's intent," and "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *City of Waco v. Kirwan*, 298 S.W.3d 618, 621–22 (Tex. 2009). In considering this jurisdictional evidence, we "take as true all evidence favorable to

8

the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* at 622. We do not adjudicate the substance of the case but instead determine whether a court has the power to reach the merits of the claim. *City of Houston v. S. Elec. Servs., Inc.*, 273 S.W.3d 739, 744 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). If the pleadings affirmatively negate the existence of jurisdiction, the plea may be granted without allowing the plaintiff an opportunity to amend his pleadings. *Miranda*, 133 S.W.3d at 227. If the relevant evidence is undisputed or fails to raise a fact issue as to jurisdiction, the trial court rules on the plea as a matter of law. *Id.* at 228.

The trial court has jurisdiction to hear a claim and award damages "only to the extent that relief is not dependent upon the adjudication, directly or indirectly, of a matter within the [Division's] exclusive jurisdiction." *Cunningham Lindsey Claims Mgmt., Inc. v. Snyder*, 291 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). When the Texas Legislature grants an administrative body the sole authority to make an initial determination in a dispute, the agency has exclusive jurisdiction over the dispute. *HealthSouth Med. Ctr. v. Emp'rs Ins. Co. of Wausau*, 232 S.W.3d 828, 830–31 (Tex. App.—Dallas 2007, pet. denied); *see also In re Mid-Century Ins. Co. of Tex.*, No. 01-12-00446-CV, 2012 WL 4717884, at *1 (Tex. App.—Houston [1st Dist.] Oct. 4, 2012, orig. proceeding)

("An agency has exclusive jurisdiction . . . when a 'pervasive regulatory scheme' reflects legislative intent that an agency have the sole power to make the initial determination in the dispute."). The determination that an agency does or does not have exclusive jurisdiction is a question of law that we consider de novo. *Snyder*, 291 S.W.3d at 477 (citing *Subaru of Am., Inc v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex. 2002)); *see also Emps. Ret. Sys. of Tex. v. Duenez*, 288 S.W.3d 905, 909 (Tex. 2009) ("Exclusive jurisdiction is a question of law we review de novo."). If an agency has exclusive jurisdiction to resolve a dispute, a party must first exhaust all administrative remedies before the trial court acquires subject matter jurisdiction over the dispute. *Snyder*, 291 S.W.3d at 477 (citing *O'Neal v. Ector Cnty. Indep. Sch. Dist.*, 251 S.W.3d 50, 51 (Tex. 2008) (per curiam)); *see also Duenez*, 288 S.W.3d at 906 ("When an agency has exclusive jurisdiction of a dispute, the courts have no jurisdiction until administrative procedures are exhausted.").

## B.    *Invocation of Workers' Compensation Coverage*

Hand & Wrist argues that it was not required to comply with the provisions of the Workers' Compensation Act, including the exhaustion of administrative remedies, because SGS "elected to not invoke its workers' compensation coverage" with respect to the treatment provided to Reagan. As support for this contention, Hand & Wrist points to the testimony of Sean Lundy, who testified that

10

SGS did not invoke its coverage because it failed to report Reagan's injury to its insurance carrier in a timely manner. SGS responds that once it initially obtained its workers' compensation insurance coverage, it did not need to affirmatively "elect" or "invoke" that coverage on a claim-by-claim basis. We agree with SGS.

Labor Code section 406.002 provides that an employer may elect to obtain workers' compensation insurance coverage and that, if it does, the employer is subject to the Workers' Compensation Act. TEX. LABOR CODE ANN. § 406.002 (Vernon 2006). A workers' compensation insurance carrier is liable for compensation for an employee's injury if (1) at the time of the injury, the employee is subject to the Workers' Compensation Act and (2) the injury arises out of and in the course and scope of employment. *Id.* § 406.031(a) (Vernon 2006). Section 406.034 provides that an employee may elect to retain his common-law right of action against his employer in the event of an injury. *Id.* § 406.034 (Vernon Supp. 2012); *Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238, 241 (Tex. 2012) (holding that employers can choose whether to subscribe to workers' compensation insurance and that employee may, if his employer subscribes, opt out and retain his common-law rights). No section in the Labor Code provides that an employer may choose particular claims by particular employees to be covered under its workers' compensation insurance. *Cf. Casados*, 358 S.W.3d at 241 & n.2 (providing that subscribing employer may not "split its workforce" by obtaining

11

coverage for some employees but not all); *Tex. Workers' Comp. Ins. Fund v. DEL Indus., Inc.*, 35 S.W.3d 591, 596 (Tex. 2000) (holding same).

Labor Code section 409.005 requires an employer to report an injury to its insurance carrier if the injury results in the absence of the employee from work for more than one day. TEX. LABOR CODE ANN. § 409.005(a)(1) (Vernon 2006). The employer must make this report within eight days after the employee's absence from work. *Id.* § 409.005(b). The insurance carrier must then file the injury report with the Division within seven days of receiving the report from the employer. *Id.* § 409.005(d). Section 409.005(*l*) provides that "[a] person commits an administrative violation if the person fails to comply with this section unless good cause exists." *Id.* § 409.005(*l*). Generally, an employee has a one-year period after the injury to file a claim for compensation, but if the employer fails to file the report required by section 409.005, the time period for filing a claim for compensation is tolled "until the day on which the report required under Section 409.005 has been furnished." *Id.* § 409.008 (Vernon 2006) (allowing tolling when employer fails to file injury report with insurance carrier); *Id.* § 409.003 (Vernon 2006) (setting one-year limitations period for filing claims for compensation).

In construing the predecessor statute to section 409.005, the San Antonio Court of Appeals held that an employer's failure to file the required injury report with its insurance carrier did not "constitute a waiver of the [Workers'

12

Compensation] Act's protections." *Regalado v. H.E. Butt Grocery Co.*, 863 S.W.2d 107, 110 (Tex. App.—San Antonio 1993, no writ). The prior statute made no mention of waiver, but it did explicitly provide for penalties for non-compliance: if the employer failed to comply with the injury-report requirement, it was subject to a fine. *Id.* The court concluded that "the legislature intended to assure compliance with the notice requirements through the assessment of a fine, not through the harsher penalty of waiver." *Id.*; *see also Wesby v. Act Pipe & Supply, Inc.*, 199 S.W.3d 614, 618 (Tex. App.—Dallas 2006, no pet.) (reaching same conclusion with respect to provision requiring employer to notify employees that it is covered by workers' compensation insurance).

Section 409.005, like its predecessor, requires the employer to notify its insurance carrier of employee injuries, and it does not provide that if the employer fails to comply it has forfeited its protections under the Workers' Compensation Act.[2] *See* TEX. LABOR CODE ANN. § 409.005. Section 409.005 also provides that a violation of the section is an administrative violation, which authorizes the commissioner of the Division to assess administrative penalties against the employer. *See id.* § 409.005(*l*) (providing that violation of section is

---

[2] Furthermore, section 409.008 provides that, when an employer fails to furnish the required injury report to the insurance carrier, the time period for an employee to file a claim for compensation is tolled until such report is furnished, indicating that the employer's failure to provide notice of the injury does not remove the case from the purview of the Workers' Compensation Act. *See* TEX. LABOR CODE ANN. § 409.008 (Vernon 2006).

13

administrative violation); *id.* § 415.021(a) (Vernon Supp. 2012) (authorizing assessment of administrative penalties). We therefore follow the San Antonio Court of Appeals' rationale in *Regalado* and hold that an employer's failure to provide the required injury report to its insurance carrier pursuant to section 409.005 does not forfeit the employer's protections under the Workers' Compensation Act. *Regalado*, 863 S.W.2d at 110; *see also Wesby*, 199 S.W.3d at 618 (following same rationale in holding that failure to notify employees of workers' compensation coverage does not result in waiver).

Hand & Wrist presented evidence, in the form of Lundy's testimony, that SGS did not notify its insurance carrier of Reagan's injury in a timely manner. Even when taking this testimony as true, as we must when reviewing a plea to the jurisdiction, we conclude that it is not evidence that SGS failed to "invoke" its workers' compensation insurance coverage. *See Kirwan*, 298 S.W.3d at 622 (providing that, when reviewing plea to jurisdiction, we must "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor"). SGS "invoked" its workers' compensation insurance coverage when it initially obtained the coverage; it was not required to take any specific action to "invoke" that coverage after Reagan was injured, and it did not forfeit its protections under the Workers' Compensation Act when it failed to notify its insurance carrier of Reagan's injury in a timely manner.

14

We therefore conclude that the Workers' Compensation Act applies to this case, and all parties involved—Reagan, SGS, SGS's insurance carrier, and Hand & Wrist—were required to comply with the Act's provisions to resolve any disputes.

## C.    *Exhaustion of Administrative Remedies*

In the Workers' Compensation Act, the Texas Legislature granted authority to the Division to adopt policies and guidelines concerning reimbursement to health care providers in workers' compensation cases.  *See* TEX. LABOR CODE ANN. § 413.011(a) (Vernon Supp. 2012); *In re Mid-Century Ins. Co.*, 2012 WL 4717884, at *2; *Main Rehab. & Diagnostic Ctr., LLC v. Liberty Mut. Ins. Co.*, 376 S.W.3d 825, 830 (Tex. App.—Dallas 2012, no pet.).  A party, including a health care provider, is entitled to a review of a medical service provided if the provider is "denied payment or paid a reduced amount for the medical service rendered." TEX. LABOR CODE ANN. § 413.031(a)(1) (Vernon Supp. 2012); *Main Rehab. & Diagnostic Ctr.*, 376 S.W.3d at 830–31 ("A health care provider under the workers' compensation system has the right to seek [medical dispute resolution] before the Division when the provider has rendered a medical service but has been paid a reduced amount for that service.").

Texas Administrative Code Chapter 133 sets out the procedures that the health care provider must follow to obtain payment from an insurance carrier for treatment provided to a workers' compensation claimant.  *See, e.g.*, 28 TEX.

15

ADMIN. CODE § 133.20 (2009) (Tex. Dep't of Ins., Div. of Workers' Comp., Medical Bill Submission by Health Care Provider); *see also Main Rehab. & Diagnostic Ctr.*, 376 S.W.3d at 831 (describing administrative procedures for protesting denial or reduction of fees owed to health care providers). If the health care provider is dissatisfied with the insurance carrier's handling of reimbursement for medical services, the provider may file a request for medical fee dispute resolution with the Medical Fee Dispute Resolution Section of the Division. *See* 28 TEX. ADMIN. CODE § 133.307(c) (2012) (Tex. Dep't of Ins., Div. of Workers' Comp., MDR of Fee Disputes); *In re Mid-Century Ins. Co.*, 2012 WL 4717884, at *3. If the provider receives an adverse determination during the fee dispute process, it may seek review of that ruling in a benefit review conference, and, if the dispute remains unresolved after such a conference, the provider may seek review in a contested case hearing before an Administrative Law Judge of the State Office of Administrative Hearings. 28 TEX. ADMIN CODE § 133.307(g). Once the provider has exhausted all of its administrative remedies by receiving an unfavorable ruling from the Administrative Law Judge, the provider may seek judicial review of the adverse ruling. *Id.* § 133.307(g)(3); *see also* TEX. LABOR CODE ANN. § 413.031(k-1) ("A party who has exhausted all administrative remedies . . . and who is aggrieved by a final decision of the division or the State

16

Office of Administrative Hearings may seek judicial review of the decision."); *Main Rehab. & Diagnostic Ctr.*, 376 S.W.3d at 831 (stating same).

By granting the Division the sole authority to make an initial determination of a medical fee dispute, the Legislature has given the Division exclusive jurisdiction over these disputes. *See Main Rehab. & Diagnostic Ctr.*, 376 S.W.3d at 832; *HealthSouth*, 232 S.W.3d at 831; *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 435 (Tex. App.—Austin 2004, pet. denied) ("Because the statutory scheme demonstrates that the legislature has granted to the Commission the sole authority to make an initial determination of a medical fee or medical necessity dispute, we hold that the Commission has exclusive jurisdiction over these disputes."); *see also In re Mid-Century Ins. Co.*, 2012 WL 4717884, at \*2 (stating that Division's exclusive jurisdiction "expressly extends to disputes over a workers' compensation insurer's denial of some or all of the amount of a health care provider's bills for medical services rendered"). Because the Division has exclusive jurisdiction over medical fee disputes, a district court lacks jurisdiction over these disputes until the aggrieved party has exhausted all of its administrative remedies with the Division. *In re Mid-Century Ins. Co.*, 2012 WL 4717884, at \*3.

Here, Hand & Wrist sought recovery of the entire amount of the fees that it had billed for the medical services rendered to Reagan. Labor Code section 413.031 and Texas Administrative Code Chapter 133 govern these types of

17

disputes and provide specific administrative remedies that must be exhausted before a district court acquires jurisdiction over the dispute. Moreover, to the extent Hand & Wrist argues that the Division lacks exclusive jurisdiction over this case because the dispute involves a contract between Hand & Wrist and SGS—the Letter of Guarantee—we note that this Court held in *In re Mid-Century Insurance Co.* that the Division has exclusive original jurisdiction over fee disputes, even when those disputes are contract-based. *Id.* at *5–6. We, therefore, hold that the Division has exclusive jurisdiction over the fee dispute at issue in this case, and, thus, Hand & Wrist was required to exhaust its administrative remedies prior to filing suit in the district court. *See id.* at *5; *Main Rehab. & Diagnostic Ctr.*, 376 S.W.3d at 832; *HealthSouth*, 232 S.W.3d at 831; *Howell*, 143 S.W.3d at 435. Because it is undisputed that Hand & Wrist did not engage in any administrative remedies, let alone exhaust them, prior to filing suit, we conclude that the district court did not have subject matter jurisdiction over this dispute. *See In re Mid-Century Ins. Co.*, 2012 WL 4717884, at *3.

### D. Applicability of Section 408.001(a)'s Exclusive Remedies Provision

Hand & Wrist also argues that Labor Code section 408.001(a), the "Exclusive Remedies" provision, applies only to employees, and not to health care providers, and, therefore, the trial court erroneously relied on it in granting SGS's plea to the jurisdiction. We agree with Hand & Wrist that section 408.001(a) has

18

no applicability to this case, but that does not change our conclusion that Hand & Wrist was required to exhaust its administrative remedies before filing suit.

Labor Code section 408.001(a) states, "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . against the employer . . . for the death of or a work-related injury sustained by the employee." TEX. LABOR CODE ANN. § 408.001(a) (Vernon 2006). This provision is an affirmative defense that the defendant-employer must plead and prove, and, once its requirements are met, all employee claims of work-related negligence and gross negligence are barred. *See Warnke v. Nabors Drilling USA, L.P.*, 358 S.W.3d 338, 343 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

In this case, as SGS notes, no party raised the applicability of section 408.001(a) before the trial court, either in the plea to the jurisdiction or in the motion for new trial. SGS did not plead and prove this affirmative defense, and neither party argued that this section either does or does not support granting the plea to the jurisdiction. Thus, Hand & Wrist is incorrect in its assertion that the trial court relied upon this statute in granting SGS's plea to the jurisdiction.

Furthermore, Labor Code Chapter 408, entitled "Workers' Compensation Benefits," addresses the employee's ability to recover specific types of benefits, such as, for example, medical or temporary income benefits. *See, e.g.*, TEX. LABOR

19

CODE ANN. § 408.021 (Vernon 2006) (addressing entitlement to medical benefits); *id.* § 408.101 (Vernon 2006) (addressing entitlement to temporary income benefits). The focus of this chapter, as both parties point out, is on the employee and what he may recover as compensation for his work-related injury.

In arguing that the trial court improperly granted the plea to the jurisdiction, Hand & Wrist fails to consider Labor Code Chapter 413, entitled "Medical Review." The focus of this chapter is on health care providers and insurance carriers, and it addresses issues such as reimbursement policies and payment to health care providers by insurance carriers. *See, e.g.*, *id.* § 413.011 (requiring commissioner to adopt health care reimbursement policies and guidelines); *id.* § 413.015(a) (Vernon 2006) (requiring insurance carriers to "make appropriate payment of charges for medical services provided"). Subchapter C of Chapter 413, entitled "Dispute Resolution," contains section 413.031, which, as we have already noted, allows a health care provider to seek "review of a medical service provided . . . if [the] health care provider is . . . denied payment or paid a reduced amount for the medical service rendered." *Id.* § 413.031(a)(1).

Section 413.031 is the section that was asserted by SGS in its plea to the jurisdiction, and it is applicable to this case, which is, in essence, a fee dispute over how much Hand & Wrist should receive for the medical care provided to Reagan. These disputes are within the Division's exclusive jurisdiction and require the

20

aggrieved health care provider to exhaust its administrative remedies before filing suit. *See In re Mid-Century Ins. Co.*, 2012 WL 4717884, at *5; *Main Rehab. & Diagnostic Ctr.*, 376 S.W.3d at 832; *HealthSouth*, 232 S.W.3d at 831; *Howell*, 143 S.W.3d at 435. Thus, although section 408.001(a)'s exclusive remedies provision does not apply to this case, section 413.031 does, and it requires exhaustion of administrative remedies before the health care provider can bring its medical fee dispute in the district court.

Because Hand & Wrist did not exhaust its administrative remedies prior to filing suit, we hold that the trial court properly granted SGS's plea to the jurisdiction.

**Conclusion**

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Bland.

21