COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | |
| JESSE ROBLES, | | No. 08-18-00170-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | County Court at Law No. 3 |
| | § | |
| MOUNT FRANKLIN FOOD, L.L.C., | | of El Paso County, Texas |
| D/B/A AZAR NUT COMPANY, | § | |
| | | (TC # 2016-DCV-2248) |
| Appellee. | § | |

## **O P I N I O N**

A mishap in an industrial workplace injured Jesse Robles. His regular employer, Southwest Staffing, had sent him as a temporary worker to Mount Franklin Food, LLC, that does business as Azar Nut Company (hereinafter "Azar Nut"). It was an Azar Nut employee that allegedly caused the industrial accident resulting in Robles's injury. Southwest Staffing's workers' compensation carrier accepted Robles's claim and paid him medical and indemnity benefits. Robles then sued Azar Nut, who prevailed on the trial court to dismiss the suit based on the exclusive remedy provisions of the Texas Workers' Compensation Act. We affirm that decision.

**BACKGROUND**

Azar Nut runs a food processing plant. It has its own employees, but apparently needs temporary help. So, it turned to Southwest Staffing who provides temporary workers under a contract that specifies the terms of that arrangement. Robles was such a temporary worker. While performing his job on April 2, 2015, he was injured when a regular Azar Nut employee, Alejandro Galvez, misloaded a large bag of nuts using a forklift. A hook apparatus fell on Robles injuring him. He pursued two avenues of relief. First, he filed a workers' compensation claim with Texas Mutual Insurance Company under an insurance policy secured by Southwest Staffing. Second, he filed a lawsuit against both Azar Nut and Galvez. That suit alleges that Galvez was negligent in operating the forklift. It also alleged the Azar Nut, through its employees, agents, contractors and representative was negligent in various ways, some specific to the use of the forklift, and some more general, such as failures to warn, inspect, train, supervise, and enforce safety regulations. The suit also alleged Azar Nut was negligent in hiring Galvez, and in entrusting a forklift to him.

Azar Nut and Galvez answered, asserting as an affirmative defense that Robles's claim was barred by the exclusive remedy provision in the Texas Workers' Compensation Act ("TWCA"). TEX.LAB.CODE ANN. § 408.001(a). Through an amended petition, Robles dropped Galvez as a party and asserted claims solely against Azar Nut.

Azar Nut then filed the pleading that leads to this appeal. In what was labeled its "Plea to the Jurisdiction and Motion to Dismiss or in the Alternative Motion to Abate" Azar Nut argued that Robles's sole remedy was the recovery of benefits under Southwest Staffing's workers' compensation policy. The motion was premised on Section 406.034 of the Labor Code that provides:

> For workers' compensation insurance purposes, if a temporary employment service elects to obtain workers' compensation insurance, the client of the temporary

employment service and the temporary employment service are subject to Sections 406.034 and 408.001.

TEX.LAB.CODE ANN. § 93.004(b). In turn, Section 408.001 provides that workers' compensation benefits are an employee's exclusive remedy:

> Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.

*Id*. at § 408.001(a).[1]

Azar Nut's motion was supported by the affidavit of its human resource officer who swore that Southwest Staffing assigns "temporary employees to work temporary employment positions" at Azar Nut per an agreement between the two. Further, Jesse Robles was such a temporary employee on the date he was injured. The motion was also supported by an affidavit of a senior manager from Texas Mutual Insurance Company who provides workers' compensation coverage to Southwest Staffing. That affidavit proved up and attached the Southwest Staffing's workers' compensation insurance policy in effect on the date of the accident. That policy also included "Alternate Employer Endorsement" that named Azar Nut as an insured.[2] The affidavit also

---

[1] Section 406.034, also referenced by Section 93.004(b), codifies an employee's right to retain their common law rights by filing a timely election. *Id*. at § 406.034. No claim is made that Robles made such an election.

[2] The most relevant portion of that endorsement provides:

> This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.

> Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

> The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

3

documents that Robles actually filed a claim under the workers' compensation policy and successfully collected medical and income benefits. Robles filed a response raising several issues that we discuss below. The trial court granted Azar Nut's motion and dismissed the case.

## PLEA TO THE JURISDICTION OR SUMMARY JUDGMENT?

Robles's first issue on appeal complains that the trial court erred in granting a plea to the jurisdiction/motion to dismiss when Azar Nut was actually advancing an affirmative defense. Robles reasons that affirmative defenses might be argued in a motion for summary judgment under Rule 166a(b) but not through a plea to the jurisdiction or motion to dismiss. He also urges this Court not to alternatively consider the motion and response below as a *de facto* summary judgment and review the case under the summary judgment standard.

We agree with Robles that the defense asserted here should have been raised pretrial through a motion for summary judgment. The exclusive remedy provision under the Labor Code provides an affirmative defense. *Reveles v. OEP Holdings, LLC*, 574 S.W.3d 34, 37 (Tex.App.--El Paso 2018, no pet.)("The exclusive remedy provision is an affirmative defense that protects employers from certain common-law claims of their employees including negligence claims."); *Hand & Wrist Ctr. of Houston, P.A. v. SGS Control Services, Inc.*, 409 S.W.3d 743, 753 (Tex.App.--Houston [1st Dist.] 2013, no pet.); *Wesby v. Act Pipe & Supply, Inc.*, 199 S.W.3d 614, 617 (Tex.App.--Dallas 2006, no pet.); *Morales v. Martin Resources, Inc.*, 183 S.W.3d 469, 471 (Tex.App.--Eastland 2005, no pet.); *Pierce v. Holiday*, 155 S.W.3d 676, 678 (Tex.App.--Texarkana 2005, no pet.); *see also Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238, 240 (Tex. 2012)("Port Elevator raised the affirmative defense that workers' compensation was the plaintiffs' exclusive remedy."). Affirmative defenses should be raised through a motion for summary judgment or proven at trial. *See Texas Underground, Inc. v. Texas Workforce Commn.*,

4

335 S.W.3d 670, 676 (Tex.App.--Dallas 2011, no pet.)(so stating as to limitations defense); *Briggs v. Toyota Mfg. of Texas*, 337 S.W.3d 275, 281 (Tex.App.--San Antonio 2010, no pet.)(so stated as to exclusive remedy defense); *In re D.K.M.*, 242 S.W.3d 863, 865 (Tex.App.--Austin 2007, no pet.)(so stated as to limitations defense).

Texas has a detailed rule that governs summary judgment procedure. TEX.R.CIV.P. 166a. A body of law has interpreted and explained the various provisions of that rule. Lacking a similarly detailed rule for pleas to the jurisdiction, we rely on a different body of law to govern such pleas. *See e.g. Texas Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 223 (Tex. 2004). Those cases usually arise in the context of a governmental entity asserting immunity or a party asserting the failure to exhaust administrative remedies. *See* e.g. *Texas Dept. of Crim. Justice v. Flores*, 555 S.W.3d 656, 661 (Tex.App.--El Paso 2018, no pet.)(immunity); *Southwest Convenience Stores, LLC v. Mora*, 560 S.W.3d 392, 399 (Tex.App.--El Paso 2018, no pet.)(failure to exhaust). And while a plea to the jurisdiction "generally mirrors" a summary judgment, *Miranda*, 133 S.W.3d at 228, it is not helpful to confuse the two. Accordingly, we agree with the San Antonio Court of Appeals that pursuing the exclusive remedy defense through a motion to dismiss "is problematic and not to be encouraged[.]" *Briggs*, 337 S.W.3d at 281. But also like that same court, and for much the same reasons, we do not find that the caption on the pleading here should lead to a reversal.

First, Robles never complained below that the plea to the jurisdiction/motion to dismiss was an improper procedural vehicle to raise the exclusivity bar. We generally require as a matter of error preservation that parties first raise their complaints to the trial court. TEX.R.APP.P. 33. Second, Azar Nut did not gain some procedural advantage by using the plea to the jurisdiction/motion to dismiss as opposed to a motion for summary judgement. That is, it did not

5

attempt to set the motion on less than twenty-one days' notice or avoid the evidentiary burdens attendant to summary judgments proofs.[3]  Finally, we have an obligation to look to the substance of a motion and may construe a motion to dismiss as a summary judgment.  *See* TEX.R.CIV.P. 71 ("When a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated."); *Pipes v. Hemingway*, 358 S.W.3d 438, 446-47 (Tex.App.--Dallas 2012, no pet.)(treating dismissal motion as a summary judgment), *disp. on merits*, No. 05-13-00428-CV, 2014 WL 1477735 (Tex.App.--Dallas Apr. 14, 2014, pet. denied)(mem.op.); *Briggs*, 337 S.W.3d at 281 (reviewing motion to dismiss based on exclusive remedy defense as summary judgment motion) *Martin v. Dosohs I, Ltd., Inc.*, 2 S.W.3d 350, 353 (Tex.App.--San Antonio 1999, pet. denied)(treating plea in abatement as a plea in bar); *Walker v. Sharpe*, 807 S.W.2d 442, 446-47 & n.2 (Tex.App.--Corpus Christi 1991, no writ) (affirmative defense of res judicata improperly raised in plea in abatement or a plea to the jurisdiction treated as a plea in bar); *Robinson v. Buckner Park, Inc.*, 547 S.W.2d 60, 61 n.1 (Tex.App.--Dallas 1977, writ ref'd n.r.e.)(treating motion for dismissal as summary judgment); *Cuba v. Williams*, No. 01-18-00122-CV, 2019 WL 1716061, at *3-4 (Tex.App.--Houston [1st Dist.] Apr. 18, 2019, no pet. h.)(mem.op.)(treating motion to show cause why case should not be dismissed for failure to timely serve defendant as summary judgment motion).

We overrule Issue One, at least to the extent that it seeks a reversal and remand.  We agree with the issue to extent that we will review the order of dismissal as if it was based on a properly filed motion for summary judgment.

---

[3] Azar Nut filed its original plea with supporting affidavits on January 27, 2017 and filed a supplemental plea with one additional proof on August 18, 2017.  The trial court first set the matter for hearing on November 16, 2017, but eventually reset the motion for June 7, 2018.  Robles filed a response, attaching evidentiary proofs well in advance of the hearing.  The response did not object to the admissibility of any of the evidence, and as we note, it did not object to raising the exclusive remedy bar through a motion to dismiss.

## STANDARD OF REVIEW

We review a trial court's decision to grant summary judgment *de novo. Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Under a traditional motion for summary judgment motion, the moving party carries the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Helix Energy Solutions Group, Inc. v. Gold*, 522 S.W.3d 427, 431 (Tex. 2017). Stated otherwise, Azar Nut must conclusively negate one of the elements of Robles's claim or conclusively establish as a matter of law all the elements of an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Evidence is conclusive if reasonable people could not differ in the conclusions drawn from it. *Gold*, 522 S.W.3d at 431. Once the movant establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence which raises a genuine issue of material fact. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979).

Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex.App.--El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Fort Worth Osteopathic Hospital*, 148 S.W.3d at 99. A non-movant raises a genuine issue of material fact by producing more than a scintilla of evidence regarding the challenged element. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013). More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). There is less than a scintilla of evidence when the evidence is so

7

weak as to do no more than create a mere surmise or suspicion of a material fact. *Ianni v. Loram Maintenance of Way, Inc*., 16 S.W.3d 508, 513 (Tex.App.-El Paso 2000, pet. denied).

## EXCLUSIVE REMEDY DEFENSE

Among the several states, Texas has stood alone in not requiring private employers to provide workers' compensation insurance. *Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238, 241 (Tex. 2012). Yet it encourages private employers to secure coverage by: (1) abolishing many common-law defenses if they do not subscribe, and (2) providing a bar to ordinary negligence suits if they do. TEX.LAB.CODE ANN. § 406.033 (abolishing common-law defenses); *id*. at § 408.001(a)(codifying exclusive remedy defense). Thus, an employer who subscribes to workers' compensation insurance may raise the exclusive remedy provision as a bar to a negligence claim filed against it. *Casados*, 358 S.W.3d at 241.[4]

To invoke the exclusive remedy provision, a defendant must generally show that: (1) the injured worker was an employee of the defendant at the time of the work-related injury and (2) the injured worker was covered by workers' compensation insurance. *See* TEX.LAB.CODE ANN. § 408.001(a). Texas, however, also allows that an employee may have more than one employer at the time of an injury for the purposes of the exclusive remedies defense. *Wingfoot Enterprises v. Alvarado*, 111 S.W.3d 134, 140 (Tex. 2003)("[W]e conclude that the Act's decided bias in favor of employers electing to provide coverage for their employees supports our conclusion that the Act permits more than one employer for workers' compensation purposes."): *see also Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 476 (Tex. 2005)(stating that client company could assert exclusive-remedy defense to claims by temporary employee if it was covered by workers'

---

[4] The sole exception to the exclusive remedy provision is for an employee's death "caused by an intentional act or omission of the employer or by the employer's gross negligence." TEX.LAB.CODE ANN. § 408.001(b).

compensation insurance). Deciding who gets to wear the employer hat can itself present a thorny question.

Historically, the person with the right to control the employee is deemed the employer. *Western Steel Co. v. Altenburg*, 206 S.W.3d 121, 123-24 (Tex. 2006); *Garza*, 161 S.W.3d at 477. If the absence of a written contract that addresses the right of control, the fact finder looks to evidence who actually exercised control. *See Limestone Products Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002)("We measure the right to control by considering: (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job." An "employer has the right to control the progress, details, and methods of operations of the work."). If a written contract addresses right of control, the contract controls, but not always. *See Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex. 1992)(reversing for failure to submit jury issue on borrowed servant even in the face of conflicting contract); *Stevenson v. Waste Mgt. of Texas, Inc.*, 572 S.W.3d 707 (Tex.App.--Houston [14th Dist.] 2019, pet. filed)(noting that written contract might not control if (1) the contract was a subterfuge; (2) the parties modified the contract by a subsequent express or implied agreement; or (3) one party's exercise of control over the details of the person's work was persistent and the other party acquiesced in that exercise of control).

These concepts have sometimes made for a difficult hill to climb in claiming employer status, at least for summary judgment purposes. In the world of leased or borrowed employees, a contract might designate Company A as the employer, thus precluding summary judgment for Company B who claims the worker as its own. *Cf. Hoffman v. Trinity Industries, Inc.*, 979 S.W.2d

9

88, 90 (Tex.App.--Beaumont 1998, writ dism'd by agr.)(summary judgment should have been denied for client company that leased employee when contract only designated staff leasing agency as employer) *with Brown v. Aztec Rig Equipment, Inc.,* 921 S.W.2d 835, 838 (Tex.App.--Houston [14th Dist.] 1996, writ denied)(summary judgment granted when leasing contract designated both lessor and lessee companies as co-employers).  And even if the borrowing company presents evidence that it actually controlled the details of the employee's work--making the employee a borrowed servant--the contract might state otherwise and create a fact issue precluding summary judgment.  *Hoffman*, 979 S.W.2d at 90-91.

In 2013, the Legislature sought to simplify that issue, at least for temporary employment services, with the passage of Texas Labor Code Section 93.004.  That provision states that if a temporary employment service elects to carry workers' compensation both "the client of the temporary employment service and the temporary employment service are subject to" the exclusive remedies provision.  *Id.* at § 93.004(b).  Supporters of the bill urged that enactment was necessary to avoid the results of past litigation over the contractual right of control issue:

> The bill would reduce cost and exposure to liability borne by nonsubscribing client companies.  It would allow the temporary agencies and non-subscribing companies to stop trying to develop complex contractual arrangements in the hopes of preventing temporary employees from claiming workers' compensation and also suing the non-subscribing companies.  Such efforts are costly and cumbersome, and in the end they do not always withstand a court challenge.

House Research Organization, Bill Analysis, Tex. H.B. 1762, 83rd L.9., R.S. (2013)(bill supporter's statement).  The provision took effect for any work-related injury that occurs on or after September 1, 2013.  Act of June 13, 2013, 83rd Leg., R.S., ch. 321, § 3, 2013 TEX.GEN.LAWS 1082.  Robles's injury occurred after that date.  Azar Nut raised the provision in its motion, and our only question is whether Azar Nut conclusively proved its application.

## APPLICATION

10

Under Section 93.004(b), Azar Nut carried the summary judgment burden to show that (1) it was the client company of a temporary employment service; (2) the temporary employment service carried workers' compensation insurance; and (3) that Robles was an employee covered by that workers' compensation insurance coverage. TEX.LAB.CODE ANN. § 93.004(b) and § 408.001(a). Azar Nut met its burden here.

A "temporary employment service" is defined as "a person who employs individuals for the purpose of assigning those individuals to the clients of the service to support or supplement the client's workforce in a special work situation, including: (A) an employee absence; (B) a temporary skill shortage; (C) a seasonal workload; or (D) a special assignment or project." TEX.LAB.CODE ANN. § 93.001(2). Azar Nut's motion included an affidavit from its human resource director that "Southwest Staffing, Inc. is a temporary employment agency that works with [Azar Nut] by assigning temporary employees to work temporary employment positions" and "Jesse Robles was assigned to work at [Azar Nut] by Southwest Staffing Inc. as a result of this relationship" on the date of the accident. Robles did not challenge this statement.

Nor is there any dispute that Southwest Staffing provided workers' compensation insurance that covered Robles for the injury in question. The motion included an affidavit from a senior manager of Texas Mutual Insurance Company that included as an exhibit a copy of the actual workers' compensation insurance policy, and a claims summary documenting that medical and indemnity benefits were paid to Robles.[5] Having met its initial summary judgment burden, the onus shifted to Robles to raise a genuine issue of material fact. We conclude he did not do so here.

---

[5] Similarly, we could affirm on the basis that Azar Nut itself was an insured under Southwest Staffing's workers' compensation policy under the alternate employer endorsement. In *Garza*, the Texas Supreme Court held that a client company could avail itself of the exclusive remedy provision against claims by a temporary employee if either: (1) the client company was a named insured on the staffing company's policy; (2) the staffing company obtained a separate workers' compensation policy for the client company; or (3) the client company obtained its own workers' compensation policy. 161 S.W.3d at 480. The court remanded that case because there was no evidence the client company had any such coverage. *Id.* at 481. The alternate employer endorsement is undisputed on this record.

11

Robles focuses on several provisions in the Southwest Staffing/Azar Nut contract that define who is the employer and which further suggest that Robles was an independent contractor at the time of the injury. The contract states, for instance, that Southwest Staffing would provide Azar Nut with "Southwest Staffing Inc[.] employees." Southwest Staffing agreed to discharge all the usual duties of an employer, such as handling payroll, providing insurance, and providing any employee benefits. The temporary employees were required to, and Robles in fact did sign, a waiver disclaiming any entitlement to employee benefits that Azar Nut may have provided its own employees. And the contract specifically states that the services which Southwest Staffing renders under the agreement "shall be as an independent contractor[.]" Seizing on this contract language, Robles asserts that it creates a fact question as to whether or not Robles was Azar Nut's employee at the time of the injury. *See Newspapers, Inc. v. Love,* 380 S.W.2d 582 (Tex. 1964)(contract designating person as independent contractor creates fact issue as to who exercised control unless contract was shown to be a subterfuge).

These arguments, however, miss the mark following the passage of Section 93.004. That provision does not turn on who exercises a right of control, or whether the client company fits the traditional definition of an employer. It simply requires that a temporary employment service provide an employee to the client company and that the temporary employment service is a subscriber under the TWCA. Whatever force Robles's arguments may have had before the passage of Section 93.004, they falter here.

Robles also argues that Azar Nut failed to establish that the employment relationship fell under the Professional Employer Organization Act (PEOA). *See* TEX.LAB.CODE ANN. §§ 91.001-.062. That Act governs the "coemployment relationship" when a "client" enters into a written professional employer services agreement with a "license holder." *See id.* § 91.011(3-b) §

12

91.001(11); *Rodriguez v. Lockhart Contracting Services, Inc.*, 499 S.W.3d 48, 54 (Tex.App.--San Antonio 2016, no pet.)(describing PEOA in detail). "Generally speaking, if either coemployer has elected to acquire coverage under the TWCA, the worker is covered under the TWCA and subject to its mandates, including the exclusive remedy bar--assuming, of course, the worker was in the course and scope of his employment at the time of the injury and the suit is for those claims covered by the TWCA." *Id*. at 54. Robles specifically argues that the summary judgment record does not establish that Southwest Staffing was a "license holder" under the PEOA.

The PEOA, however, governs organizations that provide "Professional employer services" and excludes "temporary help[.]" TEX.LAB.CODE ANN. § 91.001(14)(a). And the "coemployment relationship" means one that that "is intended to be an ongoing relationship rather than a temporary or specific one[.]" Given the statutory definitions under the PEOA, that Chapter (found in Section 91 of the Labor Code) does not apply to Robles's employment. Nor does it apply to the exclusive remedies defense given to the client companies of temporary employment agencies found in Chapter 93 of the Texas Labor Code. Thus, Azar Nut had no need to show that Southwest Staffing was a license holder under the PEOA. Rather, under Section 93.004 it was enough to show that Southwest Staff was a temporary employment service with workers' compensation coverage that provided a temporary employee to Azar Nut's workplace.

Robles's Issues One and Two are overruled. We affirm the trial court's order below as a granted motion for summary judgment.

August 14, 2019

                                ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

13